UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:17CR00310 RLW |
| | ) |
| ROBERT HILL, a/k/a "Robbie," "Frijol," | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Jeffrey B. Jensen, and Tiffany G. Becker, Assistant United States Attorney for said District, and states the following in response to defendant's motion for downward variance and for the Court's consideration in sentencing set January 4, 2020. The properly calculated advisory guideline range for defendant's offense is life. Defendant requests a downward variance to the statutory mandatory minimum sentence of ten years. A sentence of ten years is wholly insufficient to address the statutory aims of sentencing. Due to the egregious nature of defendant's offense and his history, the extraordinary harm to the community and other sentencing goals, a sentence of no lower than 35 years is appropriate under the circumstances.

### Case Summary

The evidence presented at trial demonstrated that Robert Hill led a St. Louis cell of an organization that dealt enormous quantities of heroin, cocaine and other drugs over the course of many years. Hill repeatedly possessed dozens of firearms in connection with his trafficking activity. The evidence presented showed Hill's involvement in the murder of Shawn Fields, an

1

individual who had recently provided the DEA with information about Hill's activities. The Presentence Investigation Report in this case rightly calculated defendant Hill's advisory guideline range as life. Examination of the PSR in its entirety reveals nothing that would entitle or warrant Hill to a downward departure or variance from that advisory guideline range. Defendant Hill is precisely the type of armed, violent, high-volume, long-term drug trafficking leader for whom the Sentencing Commission recommended a life sentence. Despite repeated interactions with law enforcement, Hill continued to operate his multi-kilogram narcotics business, resulting in the distribution of massive amounts of heroin and cocaine on the streets of St. Louis causing untold harm to the community and the murders of at least Anthony Miller and Shawn Fields. This is not a non-violent drug offense. Hill's offense and history require the imposition of a substantial period of incapacitation as set forth in the sentencing guidelines.

Although there are no mitigating factors about the offense or Hill's personal characteristics or the balancing of sentencing factors which would weigh in favor of Hill's request for a downward variance, in the event the Court determines that a sentence less than life imprisonment would be appropriate for defendant Hill, the United States respectfully suggests a sentence of any lower than 35 years would not meet the statutory objectives of sentencing in Hill's case.

This Court heard seven days of evidence and argument about defendant Hill's conduct here and through the wiretap evidence, heard his own voice leading the St. Louis cell of the drug organization. Moreover, the PSR details Hill's consistent, ongoing criminal conduct, sometimes verifiably violent, but always creating risk of violence through the possession of an arsenal of

firearms, including assault weapons. Hill's history demonstrates nothing but his mockery of the law and an inexpressible harm to the community, all for his own financial gain.

### Sentencing Factors

As the Court is well aware, Title 18, United States Code, Section 3553(a) provides that prior to determining the sentence to be imposed, this Court must consider:

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2) the need for the sentence imposed –
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> 3) the kinds of sentences available;
>
> 4) the kinds of sentences and the sentencing range established for—
>    (A) the applicable category of offenses committed by the applicable category of defendant as set forth in the guidelines...
>
> 5) any pertinent policy statement ---
>    (A) issued by the Sentencing Commission...
>
> 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...

18 U.S.C. §3553(a).

***The Nature & Circumstances of the Offense and Defendant Weigh Heavily in Favor of a Sentence of No Less than 35 Years***

As described above, an offense more serious than Hill's is difficult to conceptualize and while his countable criminal history may not be as serious as some that the Court has seen, it is essential to remember that the evidence at trial showed Hill's consistent criminal involvement at

3

the highest levels dating all the way back to at least 2006 when $209,863 in cash was seized from his residence on Blackberry in University City.



However, this was not his first brush with the law. In paragraph 63, the PSR reveals the circumstances behind his 1998 (and thus uncounted) conviction for possession with intent to distribute a controlled substance. Defendant fired shots at a crack house during a drug transaction. Officers responded to a call for shots fired and Hill attempted to report a carjacking to cover up his involvement but later confessed to purchasing crack. Information later revealed Hill being armed and bragging about shooting the other subject in the transaction. A search warrant executed at his residence at the time revealed $33,728.33 in cash and weapons, including a handgun.

Not learning his first lesson, Hill incurred violations with the Missouri Board of Probation and Parole for failing to report as directed. Hill's conduct did not stop. He has thumbed his nose at the justice system multiple times. Review of the PSR reveals 13 convictions

4

which did not count for criminal history points. Defendant Hill was a convicted felon as of December 18, 1998, and despite being prohibited by law, consistently possessed numerous firearms until and including his 2017 arrest in this case. Gabino Aguirre testified that he always had firearms around him at locations where he received bulk quantities of heroin and cocaine from his Mexican sources of supply and where he counted money for return to those sources to enable further shipments.

The Court undoubtedly recalls the more than 60 firearms seized from defendant's house on Criterion in St. Louis County, on May 23, 2013 when the police responded to a call where they were confronted with a violent, bloody scene.




The evidence at trial showed that roughly two months later, Hill drove Ramirez to provide $60,701 to Duncanson out in the open in downtown St. Louis. The bag containing the money was seized by law enforcement on July 31, 2013.



Undeterred, Hill brazenly provided another $43,000 to Ramirez, this time with Peregrina, which was secreted in the walls of a cooler, but seized by law enforcement on August 9, 2013. During the events leading up to this seizure the evidence showed Hill was aware of a law enforcement presence and made countersurveillance moves.



The Court will certainly recall Hill fleeing from Officer Baumgartner and the resulting foot chase in Clayton, Missouri on February 19, 2016 during which Hill was carrying a backpack containing $77,738, a drug ledger reflecting high volume drug sales and four cell phones.

7



The testimony of Gabino Aguirre, which was corroborated by DEA's investigation, surveillance and court-authorized wiretaps only further demonstrates the serious nature of the offense. From 2015 onward, Aguirre served as a middleman between Hill and various Mexican sources of supply including Cocho and Gustavo Benitez-Beltran (operating through Chicago) and Jorge Peralta (operating through Texas). Aguirre and Hill's own words over the wiretap confirmed the steady and heavy volume of kilogram quantities of heroin and cocaine coming to the Duke Drive compound (the Haunted House) for further distribution to St. Louis. The organization employed sophisticated transportation and packaging methods to thwart law enforcement detection including traps in vehicles, a heroin press, and vacuum sealed plastic. The

amounts of money generated were significant as evidenced by the various seizures throughout the investigation, the conversations, the drug ledgers and the expert testimony presented as to the amount of cash ultimately generated from the distribution of such substances.

Aguirre's testimony also shed light on Hill's leadership role in the St. Louis activity and the volume at which he was dealing. This testimony was corroborated by the May 5, 2016 Cinco De Mayo delivery of three kilograms of heroin to Hill at the Duke Drive compound which was observed by DEA.

Hill's characteristics and the offense itself are not that of a non-violent small-time drug distributor. Instead, the activity involved large scale distribution, armed participants, kidnapping and murder. On May 29, 2016, Anthony Miller, one of Hill's distributors was murdered. Wire conversations between Hill and Miller's stepfather, Shawn Fields, revealed Hill knew Miller kept his drug money at a "spot" on Natural Bridge, where he was ultimately murdered. This murder occurred during the same timeframe Hill was dramatically behind in payments to his source of supply for heroin.

Just three months later, on August 22, 2016, Fields himself was arrested with ounce quantities of heroin on his way to give it to Hill. A search of Fields' estranged wife's residence revealed two firearms. The testimony at trial showed that DEA agents conducted a lengthy interview of Fields that day and that he agreed to help them in their further investigation into Hill's activities. Shortly thereafter in September 2016, Fields was murdered by gunshot.

Also in September of 2016, the reverse operation occurred after DEA agents were contacted by an individual in Mexico who had been hired to collect Hill's debt. Hill's own statements on recorded calls with confidential sources and undercover officers substantiate the

events learned earlier in the investigation. Hill sent co-defendant Demond Williams with $10,000 cash to pick up three kilograms of heroin on his behalf.

The Court also heard the testimony about the various firearms, false identification and other items seized during law enforcement's attempts to locate and arrest him.



***Defendant's Motion Does Not Demonstrate Factors About his History and Characteristics Warranting a Downward Variance***

In his motion requesting a sentence of ten years, defendant cites his educational background, his lack of previous incarceration and his status as a "great family man" and a "very kind, polite, respectful, and hard-working entrepreneur." Doc. 470 at pp. 2-4. This picture is not borne out by the Presentence Investigation Report.

As for his educational background, Hill did not finish high school and there is no documentation to support his claim that he earned any degree. PSR ¶¶ 91, 93. In his motion, defendant Hill reports having five children who rely on him financially, mentally and physically.

10

Doc. 470 at 3. Defendant's children are aged 26, 20, 19, 15 and 14 years old, thus only two are minors. There is no documentation that Hill provides either minor child with support and he denied being ordered to support them.

In support of his request for variance, Hill falsely asserts that he "has worked and filed taxes all of his life." Doc. 470 at 3. The evidence admitted at trial showed that neither Hill nor any of his associated entities filed tax returns in 2013-2016. *See* Government's Trial Exhibit 60 (Certifications of Lack of Tax Records). Thus, defendant's claims of employing more than 20 people and grossing more than three million dollars annually are completely unsupported.

Instead, defendant's history and characteristics weigh heavily in favor of a substantial sentence. This type of large scale, long term trafficker is precisely the type of defendant the Sentencing Commission had in mind when drawing up the guidelines which result in such an extremely high recommended range of punishment. This was not an isolated offense. Instead, Hill's activities continued despite numerous law enforcement actions and the volume of drugs ultimately distributed had an impact on an untold number of lives. A sentence of lower than 35 years would not adequately reflect Hill's brazen and continuous harm to society.

***Defendant's Claims of Sentencing Disparities are False***

Finally, defendant Hill argues that sentencing disparities would result if he is sentenced to more than the ten-year statutory mandatory minimum. Title 18, United States Code, Section 3553(a)(6) requires the Court to consider ***unwarranted*** sentencing disparities between among defendants with similar records who have been found guilty of similar conduct. Nothing about the co-conspirators Hill refers to demonstrates that they are similar to him or that any difference in sentence would be unwarranted. As for Gabino Aguirre, it is true he served a little more than

11

four years, all in a local jail facility before his sentencing (and presumed deportation). As the Court is aware, his criminal history made him eligible for the safety valve (Hill's does not make him so eligible). More importantly, Aguirre cooperated with the United States and provided complete and truthful testimony at trial about the offense in open court. Co-defendant Mason is also not similarly situated for purposes of sentencing disparities due to his comparably mitigated role in the offense as well as other circumstances of which the Court is uniquely aware.

***Other § 3553(a) Factors Weigh Heavily in Favor of a Substantial Sentence***

The remaining factors set forth in 18 U.S.C. § 3553(a)(2) also require a substantial sentence in this case. Specifically, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, a sentence of no less than 35 years is appropriate. Defendant Hill has repeatedly flouted law enforcement and immediately resumed his illegal activities. He has possessed numerous firearms throughout his drug dealing. Additionally, Hill is responsible for the generation of large amounts of cash preying on a vulnerable and often addicted population for his own gain. Despite Hill's claim that the indictment has "no victims involved" (Doc. 470 at 4), it is hard to conceptualize the amount of harm that was unleashed in St. Louis resulting from the distribution of the phenomenal amounts of heroin involved here. Fatal overdoses are sadly common occurrences in our community. Simply because the Government cannot show particularized harm to the end users of Hill's trafficking activities in no way means it did not occur. The large cash seizures, drug ledgers and wiretaps in this case demonstrate the drugs were sold for use. Drug use and addiction damages not only the users and addicts, but their children, family members and others in the community.

WHEREFORE, for all the foregoing reasons, the United States respectfully urges the Court to reject defendant's request for an extraordinary downward variance and impose a cumulative sentence in this case of no lower than 35 years.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Tiffany G. Becker*
TIFFANY G. BECKER, #46314MO
Assistant United States Attorney
111 S. Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically on December 11, 2020 and served by operation of the Court's electronic filing system on defendant Hill's standby counsel, Stephen Williams. A copy of the foregoing was also sent via Federal Express next day service to:

Robert Hill, 46913-044
St. Louis City Justice Center
200 S. Tucker Boulevard
St. Louis, MO 63102

*s/ Tiffany G. Becker*
TIFFANY G. BECKER, #46314MO
Assistant United States Attorney