# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 21, 2022

Mr. Kevin Michael Whiteley
Suite 1000
222 S. Central Avenue
Saint Louis, MO  63105-0000

   RE:  21-1026  United States v. Robert Hill

Dear Counsel:

   The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

   Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

         Michael E. Gans
         Clerk of Court

HAG

Enclosure(s)

cc: Ms. Tiffany Gulley Becker
  Mr. Robert Hill
  Mr. Gregory J. Linhares
  Mr. Kenneth Tihen

   District Court/Agency Case Number(s):   4:17-cr-00310-RLW-1

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 21, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE:  21-1026  United States v. Robert Hill

Dear Sirs:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant and appeared on the brief was Kevin Michael Whiteley, of Saint Louis, MO.

     Counsel who presented argument on behalf of the appellee and appeared on the brief was Tiffany Gulley Becker, AUSA, of Saint Louis, MO.

     The judge who heard the case in the district court was Honorable Ronnie L. White. The judgment of the district court was entered on January 4, 2021.

     If you have any questions concerning this case, please call this office.

              Michael E. Gans
              Clerk of Court

HAG

Enclosure(s)

cc:  MO Lawyers Weekly

     District Court/Agency Case Number(s):  4:17-cr-00310-RLW-1

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1026
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Hill, also known as Robbie, also known as Frijol

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2022
Filed: April 21, 2022

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted Robert K. Hill of conspiring to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Hill appeals, arguing that one of the Government's peremptory strikes violated *Batson v.*

*Kentucky*, 476 U.S. 79 (1986), that the district court[1] abused its discretion in admitting expert testimony, and that the evidence was insufficient to support his conviction for possessing a firearm as a convicted felon.  We affirm.

## I.

In May 2013, St. Louis County police executing a search warrant discovered a "large quantity of firearms" in a residence owned by Hillestate, Inc., whose registered agent, president, secretary, and sole board member was a "Robert Hill." Video surveillance showed Hill coming and going from the residence.  A criminal-history search revealed that a "Robert K. Hill" had been convicted of a state felony in St. Louis County circuit court in 1998.

In February 2016, Hill attempted to flee when approached by police but was caught.  A search incident to arrest revealed that he was carrying four cell phones as well as a backpack containing a large quantity of cash and a document that law enforcement identified as a drug ledger.  The cash was later counted and totaled $77,748.30.

Law enforcement applied for and received a warrant to wiretap phones used by Hill and his associates.  Over the next several months, law enforcement intercepted numerous incriminating text messages and telephone conversations.  For example, after intercepting a conversation in which Hill asked one of his associates for help with a "little job," law enforcement tracked the associate and arrested him with heroin in his possession.  The associate "gave [law enforcement] the layout of [Hill's] drug trafficking organization" and "indicated that he wished to further cooperate and mitigate his charges."  Shortly thereafter, the associate was murdered.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-2-

Other intercepts indicated that a middleman was brokering deals for the sale of "cars," which is code for heroin or cocaine, between Hill and individuals from Chicago, one of whom was subsequently apprehended with approximately three kilograms of heroin in his possession.  The middleman later testified that he had brokered deals for Hill in which Hill would purchase two to four kilograms of heroin at a time and that, independently, Hill was purchasing twenty kilograms of cocaine at a time from a source in Texas.

Eventually, law enforcement introduced an undercover officer into communication with Hill.  The undercover officer offered to sell Hill three kilograms of heroin for $10,000.  Hill accepted the offer and sent one of his associates to the designated location, where law enforcement arrested him with $10,000 in cash on his person.

In July 2017, Hill was arrested on an indictment for drug and firearm offenses. A superseding indictment charged Hill with one count of conspiracy to distribute and possess with intent to distribute one or more kilograms of heroin and 500 or more grams of cocaine, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(B)(ii), 846, and one count of possessing a firearm as a convicted felon, *see* 18 U.S.C. § 922(g)(1).  Hill pleaded not guilty and asserted his right to represent himself.

The case proceeded to trial.  During voir dire, the Government asked if any of the venirepersons "would not be able to adjudge [cooperating-witness] testimony fairly."  Venireperson 1 stated that "if [the witness is] throwing [the defendant] under the bus to save himself, I don't think that's right."  As relevant here, venirepersons 8 and 10 indicated that they agreed.  The Government inquired further:

> Juror 10, . . . Juror 1, . . . and Juror 8[,] . . . I want to probe a little bit there.  So what you're saying is you don't think you could even listen to that person's testimony? And even if it was corroborated by other evidence and other materials, that you don't think you could even listen to anything that person has to say?

Venireperson 1 spoke up first.  "[Y]ou could always listen to it," he explained, "but I mean your mind is always going to wonder if he's just, you know, saying stuff to make himself sound better and him sound worse."  But when the Government asked if he could at least consider the testimony alongside other evidence, venireperson 1 replied, "Yeah."  Likewise, venireperson 8 replied, "I'd still be able to listen and consider it, yes."  Venireperson 10 replied, "Yes, ma'am."

Later, the Government revisited the issue of cooperating witnesses in connection with recordings of wiretapped conversations.  "If the [cooperating] witness's testimony was borne out by wiretap conversations," the Government asked, "could you consider that?"  Venireperson 1 replied, "Sure"; venireperson 8 replied, "Yeah"; and venireperson 10 replied, "Yeah, I could."

The Government exercised one of its peremptory strikes on venireperson 10, who was black.  Hill announced a *Batson* objection to the strike, explaining that venireperson 10 was an "African-American individual[] and there's no really substantial reason for striking [her]."  Hill did not identify any similarly situated nonblack venirepersons whom the Government elected not to strike.

The district court called on the Government to respond.  After noting "for the record . . . that [Hill's statement] is not a sufficient *prima facie Batson* showing" and thus "does not . . . require a race-neutral reason," the Government stated that, "in the alternative, [it] would offer the following in terms of the rationale for its strike[]": "Juror Number 10 indicated that she could not listen to the cooperating witness's testimony.  And while Jurors Number 1 and 8 were rehabilitated on that issue, she did not indicate a similar rehabilitation."  Venirepersons 1 and 8 were not black, and the Government had not stricken either of them.

To this, Hill said simply, "10 wasn't specifically asked anything."  When the court corrected him, Hill said, "Well, she wasn't asked a followup."  The Government responded, "All the jurors that had responded in the positive were asked

-4-

the followup."  The district court then overruled Hill's *Batson* objection without comment.

At trial, the Government presented excerpts from the conversations that law enforcement had intercepted.  Lieutenant Curtis Sullivan testified as an expert witness to the meaning of drug code and slang used in the conversations.  The jury found Hill guilty on all counts.

Hill appeals.  Represented by newly appointed counsel, he argues that the district court clearly erred in overruling his *Batson* objection, that the district court abused its discretion in admitting parts of Lt. Sullivan's testimony, and that the evidence was insufficient to support his conviction for possessing a firearm as a convicted felon.

## II.

We begin with Hill's claim that the Government violated *Batson* by striking venireperson 10 because of her race.  Ordinarily, we review for clear error a district court's finding that a peremptory strike was not based on race.  *Miller v. United States*, 135 F.3d 1254, 1257 (8th Cir. 1998).

"*Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race."  *Snyder v. Louisiana*, 552 U.S. 472, 476 (2008).  First, the party objecting to the strike "must make a prima facie showing that [the strike] has been exercised on the basis of race."  *Id.*  Second, "if that showing has been made, the [opposing party] must offer a race-neutral basis for striking the juror in question."  *Id.* at 476-77.  Third, "in light of the parties' submissions, the trial court must determine whether the [objecting party] has shown purposeful discrimination."  *Id.* at 477.  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from[,] the party opposing the strike."  *United States v. Hampton*, 887 F.3d 339, 342 (8th Cir. 2018).

-5-

Here, Hill concedes that he never presented a *prima facie* case of discrimination.  According to the Government, that concession is sufficient to dispose of the *Batson* issue on appeal.  The Government reasons that if the party raising a *Batson* objection fails to present a *prima facie* case, then the district court should overrule the objection immediately instead of proceeding to the second step in the *Batson* procedure where the party defending the strike must proffer a race-neutral explanation.  *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 144-45 (1994).  Thus, although the district court overruled Hill's objection later, apparently on the ground that Hill had not carried his burden at step three of the *Batson* procedure, the district court could have overruled the objection earlier, on the ground that Hill had not presented a *prima facie* case at step one.  *Cf. Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986) ("Pro se litigants are not excused from compliance with substantive and procedural law . . . .").  And we have stated in other contexts that we can affirm on any basis supported by the record.  *See, e.g.*, *United States v. Baez*, 983 F.3d 1029, 1041 (8th Cir. 2020).  Therefore, the Government concludes, Hill's concession that he never presented a *prima facie* case of discrimination is fatal to his *Batson* argument on appeal.

We disagree with the concurrence's reasons for rejecting this argument.  *See post*, at 17-19.  Hill's appellate counsel was right to concede that Hill failed to present a *prima facie* case.  *See, e.g.*, *United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir. 2003) ("The mere recitation of the fact that black jurors were struck from the jury cannot alone establish a prima facie case."); *United States v. Young-Bey*, 893 F.2d 178, 180 (8th Cir. 1990) ("To establish a prima facie case under *Batson* the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.").  And the Government is correct that if the objecting party fails to present a *prima facie* case, then the district court should overrule the objection without requiring a race-neutral explanation.  *See, e.g.*, *J.E.B.*, 511 U.S. at 144-45 (confirming that the objecting party "must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike"); *United States v. Dawn*, 897 F.2d 1444, 1448-49, 1449 n.5 (8th Cir. 1990)

-6-

(stating that a race-neutral reason "is not required by *Batson*" if the objecting party "failed to establish a prima facie case"); *United States v. Stewart*, 65 F.3d 918, 924 (11th Cir. 1995) ("[T]he Supreme Court has repeatedly described the prima facie showing as a hurdle the party making a *Batson* challenge must clear before the striker is required to proffer any explanation for the challenged strikes."); *Copperwood v. Cambra*, 245 F.3d 1042, 1045 (9th Cir. 2001) ("If the defendant fails to establish a prima facie case, . . . the prosecutor is not required to offer an explanation for the challenge.").[2]

Nonetheless, we decline to affirm on this basis.  As Hill points out, a plurality of the Supreme Court has stated—and several panels of this court have repeated, albeit arguably in *dicta*—that once a race-neutral explanation has been proffered and the court has ruled on the objection, "the preliminary issue of whether the [objecting party] had made a prima facie showing becomes moot."  *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion); *United States v. Walley*, 567 F.3d 354, 357 (8th Cir. 2009) ("Our cases state (though arguably do not hold) that once the government responded with a race-neutral explanation and the district court ruled on the ultimate question of purposeful discrimination, the preliminary *prima facie* issue became moot.").  *But see Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000) (holding that "unless it concludes that a prima facie showing was made, an appellate court should neither reverse a trial court's action refusing to disallow challenged strikes, nor should it affirm a trial court's action

---

[2]We disagree with the concurrence's claim that *Davis v. Ayala*, 576 U.S. 257 (2015), stands for the contrary proposition.  *See post*, at 18-19.  When the Court observed in *Ayala* that "[t]he pattern of peremptory challenges . . . was sufficient to raise suspicions about the prosecution's motives and to call for the prosecution to explain its strikes," 576 U.S. at 285, it was not saying that demanding a race-neutral explanation was appropriate even though the defense had not presented a *prima facie* case; it was saying that demanding a race-neutral explanation was appropriate because (whatever the trial court may have concluded) the defense had presented a *prima facie* case.  *See Johnson v. California*, 545 U.S. 162, 172 (2005) (indicating that raising suspicions of discrimination suffices for a *prima facie Batson* showing); *Franklin v. Sims*, 538 F.3d 661, 665 (7th Cir. 2008) (same).

-7-

disallowing strikes").  Here, the Government proffered a race-neutral reason for the strike, explaining that venireperson 10 was less rehabilitated than venirepersons 1 and 8 on the issue of cooperating-witness testimony, and the district court overruled Hill's objection.  Arguably, then, Hill's failure to present a *prima facie* case is moot. *But see Moxley v. Bennett*, 291 F. Supp. 2d 212, 218 (W.D.N.Y. 2003) (holding that *Hernandez* did not apply where "[t]he prosecutor argued that Moxley failed to establish a *prima facie* case under *Batson*" and "subsequently offered a race-neutral explanation" solely to develop the record for appeal); *cf. Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 785 (8th Cir. 2021) (explaining that, "[w]hen the Supreme Court is splintered" and no plurality or concurring opinion is "a logical subset of" another, "the only binding aspect of the decision is its specific result"); *Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) (holding that subsequent panels are not bound by prior panels' *dicta*).

Rather than decide here whether, in light of *Hernandez* and our opinions citing it, we must treat Hill's failure to present a *prima facie* case as moot, we will affirm on another basis.  Even assuming the Government's proffer of a race-neutral reason "in effect excused [Hill] from establishing a prima facie case," *see United States v. Roebke*, 333 F.3d 911, 913 (8th Cir. 2003), Hill bore the burden of showing that this reason was pretextual, *see Hampton*, 887 F.3d at 342.  Hill's effort to carry this burden consisted of asserting that venireperson 10 "wasn't specifically asked anything" and, in any event, "wasn't asked a followup."  The *voir dire* transcript belies both claims.  Understandably, then, Hill's appellate counsel decided not to reassert them.  Instead, he advanced the new argument that venireperson 10's responses to the Government's follow-up questions were not materially different from the responses given by venirepersons 1 and 8.

The Government argues, and we agree, that Hill's failure to raise before the district court the argument that he advances on appeal provides an independent basis for affirming the overruling of his *Batson* objection.  Although governing caselaw contains support for two positions regarding what standard of review, if any, applies to *Batson* arguments based on the failure to strike similarly situated venirepersons

-8-

that were not raised before the district court, Hill's claim fails regardless of which position we adopt.

Some of our cases appear to hold that "similarly situated" *Batson* arguments raised for the first time on appeal receive no review at all. *E.g.*, *United States v. Arnold*, 835 F.3d 833, 842 (8th Cir. 2016) ("[W]e will not consider claims of pretext based upon the failure to strike similarly situated jurors unless the point was raised in the district court."); *Walley*, 567 F.3d at 358 (same); *United States v. Elliott*, 89 F.3d 1360, 1367 (8th Cir. 1996) ("Having failed to raise [his 'similarly situated' *Batson*] argument before the trial court, [the defendant] has waived his right to have it considered by this Court."). But another body of caselaw suggests that "similarly situated" *Batson* arguments raised for the first time on appeal receive plain-error review. The Supreme Court has long held that arguments that the appellant merely forfeited receive plain-error review, and only those arguments that the appellant waived receive no review at all. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 732-33 (1993). Recently, the Supreme Court has warned circuit courts against creating exceptions to this rule. *See Davis v. United States*, 589 U.S. ---, 140 S. Ct. 1060, 1061 (2020) (per curiam) (rejecting "the Fifth Circuit's outlier practice of refusing to review certain unpreserved factual arguments for plain error" on the ground that "[o]ur cases . . . do not purport to shield *any* category of errors from plain-error review" (emphasis added)).[3]  And the failure to raise a "similarly

---

[3]Undeterred, the concurrence proposes an exception that threatens to swallow the rule. According to the concurrence, the fact that "Rule 52(b) does not apply unless there is error" means that plain-error review "does not apply to legal arguments not raised in the district court." *Post*, at 20. *Contra United States v. Howard*, 973 F.3d 892, 895 n.2 (8th Cir. 2020) ("When a defendant raises an argument he did not make to the district court, we review for plain error."); *United States v. Long*, 532 F.3d 791, 796 (8th Cir. 2008) ("An argument raised for the first time on appeal is reviewed for plain error only."); *United States v. Lucas*, 499 F.3d 769, 780 (8th Cir. 2007) (en banc) ("Because [the defendant] failed to make this argument below, we review for plain error . . . ."); *United States v. Ruff*, 472 F.3d 1044, 1047 (8th Cir. 2007) ("In the context of a criminal proceeding, we review arguments not presented to the district court for plain error."); *United States v. Granados*, 117 F.3d 1089, 1093 (8th Cir. 1997) ("We review for plain error

-9-

situated" *Batson* argument before the district court would seem to constitute forfeiture rather than waiver.  *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 138 (2009) (explaining that an argument is forfeited by the "failure to raise the argument in the District Court" and waived only if "intentionally relinquished or abandoned").  *But see Elliott*, 89 F.3d at 1367 ("Having failed to raise [his 'similarly situated' *Batson*] argument before the trial court, Elliott has waived his right to have it considered by this Court.").  *But see also In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 & n.8 (Fed. Cir. 2020) (noting that the term "waiver" is sometimes used loosely to refer to forfeiture); *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) (same); *Berkshire v. Dahl*, 928 F.3d 520, 530-31 (6th Cir. 2019) (same).  So, there is also support for the proposition that we must review "similarly situated" *Batson* arguments raised for the first time on appeal for plain error.

We leave the resolution of this tension in the caselaw for another day.  Whichever way we resolve it, Hill's argument fails.  If the argument is subject to no review at all, then it is a nonstarter.  For the reasons explained below, it also fails under plain-error review.

---

arguments not raised before the district court."); *cf. Devoil-El v. Groose*, 160 F.3d 1184, 1186 (8th Cir. 1998) (indicating that a *Batson* pretext argument is not a "legal argument" anyway but an argument about a question of fact).  Instead, the concurrence argues, when confronted with a legal argument not raised in the district court, we may—at our option—either consider the argument under "[o]ther standards of review" or decline to consider the argument at all.  *Post*, at 20-21.  We are not convinced.  Under our precedent, "[a]n argument raised for the first time on appeal is reviewed for plain error *only*," *Long*, 532 F.3d at 796 (emphasis added), which precludes reviewing the argument under "[o]ther standards of review," *post*, at 20.  And *Davis* strongly suggests that we may not decline to consider the argument at all.  140 S. Ct. at 1061-62.  As for the concurrence's claim that our cases misread *Olano*, *post*, at 20, we see it the other way around, *compare post*, at 21 (arguing that "if the issue had not been raised at all, then the district court's failure to address it and make findings would *not* 'deviate from a legal rule' and be subject to Rule 52(b)"), *with Olano*, 507 U.S. at 733 ("Although in theory it could be argued that if the question was not presented to the trial court no error was committed . . . , this is not the theory that Rule 52(b) adopts." (internal quotation marks and brackets omitted)).

-10-

According to Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Rule 52(b) reflects the principle that the fairness and integrity— and thus also the public reputation—of judicial proceedings depend on procedural rules that prevent gamesmanship. *See, e.g.*, *United States v. Spero*, 331 F.3d 57, 62 (2d Cir. 2003) (discussing a procedural rule whose "purposes[] includ[e] deterrence of gamesmanship" that "unfairly" advantages one party); *Rosales-Mireles v. United States*, 585 U.S. ---, 138 S. Ct. 1897, 1910 (2018) (noting that "unjust procedures may well undermine public perception of [judicial] proceedings"). Among these rules is the contemporaneous-objection rule, which "ordinarily precludes the raising on appeal of [an] unpreserved claim of trial error." *See Puckett*, 556 U.S. at 135. "[T]he contemporaneous objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* at 134. Rule 52(b) partially delineates the contours of the contemporaneous-objection rule by prohibiting appellate courts from correcting any forfeited error that is not plain or does not affect substantial rights. *See Olano*, 507 U.S. at 732. But rather than specifying when correcting a forfeited error that is plain and does affect substantial rights is necessary to "preserve the fairness, integrity, or public reputation of the proceedings," Rule 52(b) commits the question to the discretion of reviewing courts to decide on a case-by-case basis. *Rosales-Mireles*, 138 S. Ct. at 1906, 1909-10; *see also Olano*, 507 U.S. at 732 ("Rule 52(b) leaves the decision to correct [a forfeited plain error affecting substantial rights] within the sound discretion of the court of appeals . . . ."). The Supreme Court has cautioned courts to exercise this discretion "sparingly," *Jones v. United States*, 527 U.S. 373, 389 (1999), only if "failure to correct the error would *seriously* affect the fairness, integrity, or public reputation of judicial proceedings," *United States v. M.R.M.*, 513 F.3d 866, 870 (8th Cir. 2008) (emphasis added) (citing *Olano*, 507 U.S. at 732-36).

"[O]rdinarily," forfeited claims of *Batson* error based on the failure to strike similarly situated venirepersons will not meet this standard. *Cf. Rosales-Mireles*,

138 S. Ct. at 1908, 1911.  This is because of the unique opportunities for sandbagging that correcting such errors would create.  *Cf. Puckett*, 556 U.S. at 134.  Factors such as eye contact and body language that are apparent only to the district court may provide a legitimate basis for a peremptory strike.  *Hampton*, 887 F.3d at 342.  Yet a party could not rely on them when exercising its strikes if we were to sustain "similarly situated" arguments raised for the first time on appeal.  The objecting party could simply wait for appeal to raise its argument and then note that there is no district court finding or record evidence to support the opposing party's response.  *See Flowers v. Mississippi*, 588 U.S. ---, 139 S. Ct. 2228, 2259-60 (2019) (Thomas, J., dissenting) ("Excusing the defendant from making his [*Batson*] arguments before the trial court encourages defense counsel to remain silent . . . and denies reviewing courts a sufficient record.").  Ordinarily, then, it is "the reversal of a conviction such as [Hill's]"—not the failure to reverse—that would "seriously affect the fairness, integrity or public reputation of judicial proceedings."  *See Johnson v. United States*, 520 U.S. 461, 470 (1997) (alteration omitted).

To be sure, "[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings" requires sustaining a forfeited "similarly situated" *Batson* argument despite the risk of sandbagging.  *See Rosales-Mireles*, 138 S. Ct. at 1909.  "But on the facts of this case, there are no such factors."  *See id.*  If anything, reversal would be especially inappropriate here.  At oral argument on appeal, counsel for the Government—the same prosecutor who conducted *voir dire*—explained that she had concluded that venirepersons 1 and 8 were more open to cooperating-witness testimony than venireperson 10 based on factors not reflected in the transcript, including "eye contact" and "body language."  Appellate counsel for Hill replied that the district court made no findings on the record regarding these matters, leaving us with nothing to rely on but the prosecutor's *ipse dixit*.  We agree.  But this just shows why reversing in this case would encourage sandbagging in others.  Consider what would happen in a future case where eye contact or body language do differentiate a stricken venireperson from otherwise similarly situated venirepersons in a way that justifies the strike.  If the objecting party were to make its "similarly situated"

-12-

argument before the district court, then the district court would likely overrule the objection and, in the process, create a record on which the court of appeals could affirm.  Whereas if the objecting party were to remain silent, then it would tee up a likely win at the court of appeals in the event that the trial does not go its way.

Thus, we need not decide whether the Government's proffer of a race-neutral explanation and the district court's subsequent ruling mooted Hill's failure to present a *prima facie* case.  Nor must we decide whether "similarly situated" *Batson* arguments raised for the first time on appeal are subject to plain-error review or no review at all.  Even assuming that Hill's failure to present a *prima facie* case is moot and that we must review Hill's argument for plain error, Hill's claim fails because declining to correct any error that may have occurred upholds rather than undermines the fairness, integrity, and public reputation of judicial proceedings.

## III.

Next, Hill challenges the admission of testimony from Lt. Sullivan that Hill claims impermissibly blended expert-witness testimony with lay-witness testimony.  Normally, we review a district court's admission of expert testimony for an abuse of discretion.  *See United States v. Overton*, 971 F.3d 756, 763 (8th Cir. 2020).  But if the appellant failed to object before the district court, then we review for plain error.  *United States v. Braden*, 844 F.3d 794, 800 (8th Cir. 2016).  Here, the parties disagree about which standard of review applies.  We need not resolve this disagreement because Hill's challenge fails even under abuse-of-discretion review.  *See United States v. Kouangvan*, 844 F.3d 996, 999 (8th Cir. 2017).

When reviewing the admission of expert testimony for an abuse of discretion, we will not reverse if the alleged error in admitting the testimony was harmless.  *See Overton*, 971 F.3d at 765-66.  Setting aside constitutional errors, which are not at issue here, an error in the admission of testimony was harmless if "the substantial rights of the defendant were unaffected" and "the error did not influence or had only a slight influence on the verdict."  *See id.* at 765; *cf. United States v. Campbell*, 6

F.4th 764, 771 (8th Cir. 2021) (clarifying that if a criminal defendant shows an evidentiary error "of constitutional magnitude, then the government is required to prove the error was harmless beyond a reasonable doubt"), *amending* 764 F.3d 880 (8th Cir. 2014).   Under this standard, the erroneous admission of testimony "cumulative of matters shown by admissible evidence" is harmless.  *Overton*, 971 F.3d at 765.

According to Hill, there were two ways in which Lt. Sullivan exceeded the bounds of his role as an expert witness translating drug code and slang.  First, Hill claims that some of the language that Lt. Sullivan "translated" was straightforward and accessible to lay jurors.  *See id.* at 763 (explaining that although "law enforcement officers [may] testify as experts about . . . jargon used in the drug trade," their "expert testimony may be inadmissible when it pertains to ordinary language").  For example, Hill points to a conversation in which Hill's middleman asked for a "number," described the quote that he received as "a little high," and proposed a lower number.  Hill suggests that the jury did not need Lt. Sullivan's expert assistance to recognize this conversation as a "negotiation" about price.

Second, Hill claims that Lt. Sullivan endorsed the Government's case as to the conspiracy count by drawing inferences in the Government's favor from the conversations he was translating.  *See United States v. Peoples*, 250 F.3d 630, 642 (8th Cir. 2001) (remanding for a new trial because the Government's expert "was allowed to emboss apparently neutral conversations . . . with the imprimatur of the government's case").  For example, when translating a conversation in which Hill's middleman reminded Hill to pay him his "nine dollars," Lt. Sullivan opined that the middleman was referring to the $9,000 reward that Hill had promised him for brokering a three-kilogram heroin deal.  Hill argues that Lt. Sullivan should have simply explained that "nine dollars" means "$9,000" without adding that the payment was for brokering a heroin deal.

Even assuming the district court abused its discretion in admitting the challenged portions of Lt. Sullivan's testimony, the error was harmless.  If the

allegedly straightforward conversations that Lt. Sullivan "translated" were as straightforward as Hill claims, then Lt. Sullivan's "translation" amounted to stating the obvious and was cumulative of the conversations themselves. *Cf. Overton*, 971 F.3d at 764-66 (concluding that the erroneous admission of a drug-slang expert's "translat[ions of] ordinary English words" was harmless in part because "[t]he text message and record calls [themselves] were properly admitted"). And any endorsement of the Government's case as to the conspiracy count that Lt. Sullivan may have offered was cumulative of overwhelming admissible evidence of Hill's guilt, including the wiretapped conversations themselves, the testimony of Hill's cooperating middleman, and the testimony of the undercover officer who helped execute the sting operation. *See id.* (concluding that a drug-slang expert's "opinions about the conversations that went beyond the words themselves" were largely cumulative of the conversations themselves, "properly admitted testimony interpreting these communications, extensive co-conspirator testimony, and [other] testimony"). Any error in admitting the challenged portions of Lt. Sullivan's testimony was therefore harmless. *See id.*; *United States v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996) (concluding that the erroneous admission of parts of a drug-slang expert's testimony was harmless because "other evidence" substantiated the expert's "occasionally expansive translations").

## IV.

Finally, Hill argues that the evidence was insufficient to support his conviction for possessing a firearm as a convicted felon. We review the sufficiency of the evidence *de novo*. *United States v. Hewitt*, 999 F.3d 1141, 1146 (8th Cir. 2021) (per curiam). A conviction is supported by sufficient evidence unless no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To prove a defendant guilty of possessing a firearm as a convicted felon, the government must prove that the defendant knew he possessed a firearm; that the firearm had been in or affected interstate commerce; and that the defendant knew he

-15-

was a convicted felon, that is, a person convicted of "a crime punishable by imprisonment for a term exceeding one year." *See* § 922(g)(1); *United States v. Harris*, 964 F.3d 718, 723-24 (8th Cir. 2020). Here, Hill does not deny that the evidence was sufficient to prove that he knew he possessed a firearm and that the firearm had been in or affected interstate commerce. Nor does he deny that, assuming the evidence was sufficient to prove that he was a convicted felon, the evidence was also sufficient to prove that he knew he was a convicted felon. *See generally Rehaif v. United States*, 588 U.S. ---, 139 S. Ct. 2191 (2019). Instead, Hill claims only that the evidence was insufficient to prove that he was, in fact, a convicted felon.

We disagree. The Government introduced evidence that an individual whose name ("Robert K. Hill") and date of birth (March 23, 1976) matched Hill's was convicted of a felony in St. Louis County circuit court in 1998. In addition, the fingerprint sample taken from Hill during booking matched a fingerprint sample taken in 1998 by the St. Louis County police from a "Robert K. Hill" born on March 23, 1976 whose race and sex match those of the appellant. The 1998 sample was taken on August 25, one day before the state filed its criminal complaint against the "Robert K. Hill" who was convicted of a felony a few months later.

Hill protests that nothing on the 1998 fingerprint card indicates that its subject was the same "Robert K. Hill" who was convicted of a felony a few months later. But it would be a remarkable coincidence if the St. Louis County police had taken a fingerprint sample from one "Robert K. Hill" the day before the state filed a criminal complaint in St. Louis County circuit court against another "Robert K. Hill" with the same date of birth. Hill also emphasizes that a booking form lists his social-security number as ending in 9813, whereas the social-security number of the "Robert K. Hill" who was convicted of a felony in 1998 ended in 2817. According to trial testimony, however, law enforcement discovered false identification in one of Hill's residences. In light of all the evidence linking Hill to the 1998 felony conviction, a reasonable jury could infer that Hill had provided law enforcement with a false social-security number and find beyond a reasonable doubt that he was the same

-16-

"Robert K. Hill" born on March 23, 1976 who was convicted of a felony in 1998. *See United States v. Sanchez-Garcia*, 461 F.3d 939, 948 (8th Cir. 2006) (affirming "the district court's finding beyond a reasonable doubt that [the defendant] was the individual previously convicted of a felony drug offense," even though the conviction was under a different name, because the finding was supported by fingerprint evidence, physical likeness, and the defendant's known use of an alias).

## V.

For the foregoing reasons, we affirm Hill's convictions.

LOKEN, Circuit Judge, concurring.

I agree we should affirm. I agree the district court did not clearly err in overruling Robert Hill's challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the government's peremptory strike of prospective juror Number 10, but I disagree with portions of the court's analysis in Part II. In all other respects, I join the court's opinion.

1. On the *Batson* issue, when the government exercised a peremptory strike on Juror No. 10, the district court invited Hill, defending himself, to "make your challenge to their strike of Juror Number 10." Hill replied: "You know, [Number 10 and Number 15 are] both just African-American individuals and there's no really substantial reason for striking them." The government then argued he made no *prima facie* showing. When the district court did not respond, the government then proffered its race-neutral reason (a reason that in my view was not obvious from Juror Number 10's *voir dire* questioning). Hill then replied, and the court upheld the strike. This procedure was entirely consistent with Eighth Circuit precedent. *See Williams v. Norris*, 576 F.3d 850, 863-65 (8th Cir. 2009) (*Batson* procedure upheld where the state court trial judge deferred ruling on whether defendant made a prima facie showing to see whether other strikes would display a pattern of discrimination), *cert. denied*, 562 U.S. 1097 (2010).

-17-

Moreover, I disagree with appointed appellate counsel's concession that Hill failed to make a sufficient *prima facie* showing, based on our holding in *United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir. 2003), that "[t]he mere recitation . . . that black jurors were struck from the jury cannot alone establish a prima facie case." Hill did not merely recite that Juror Number 10 was African-American. Based on his review of her questionnaire and participation in her *voir dire* questioning, Hill stated, "there's no really substantial reason for striking" her. In *United States v. Stevenson*, 979 F.3d 618, 624 (8th Cir. 2020), when the defendant objected that the struck prospective juror's pre-*voir dire* questionnaire responses were not "off base or bad one way or the other," the district court concluded this made a *prima facie* case, and the government then satisfied the court that it had race-neutral reasons for the strike. There is no basis to infer the district court would have ruled differently here. Particularly when the criminal defendant is representing himself, the *prima facie* showing needed to require the district court to conduct a *Batson* review should not be demanding. If *Batson* is to be other than a dead letter, it is reasonable in most circumstances to require the government to identify its race-neutral reason. As the Court noted in discussing the *Batson* framework in *Johnson v. California*, "[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." 545 U.S. 162, 172 (2005).

I reject as contrary to Supreme Court precedent, and to persuasive opinions by other appellate courts, the court's dicta that, "the Government is correct that if the objecting party fails to present a *prima facie* case, then the district court should overrule the objection without requiring a race-neutral reason." *Ante* p.6. In *Batson* itself, the Supreme Court stated: "In light of the variety of jury selection practices followed in our . . . federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." 476 U.S. at 99-100 n.24. More recently, in *Davis v. Ayala*, 135 S. Ct. 2187, 2194 (2015), the trial judge stated that defendant's objections "failed to establish a prima facie case of racial discrimination, but he nevertheless required the prosecution to reveal the reasons for the strikes." Rather

-18-

than condemn this procedure, the Court stated: "[t]he pattern of peremptory challenges . . . was sufficient to raise suspicions . . . and to call for the prosecution to explain its strikes." Id. at 2208. Consistent with Supreme Court guidance, I conclude this is an issue better left to the district court's discretion based upon the *voir dire* circumstances in a particular case.

Other courts agree. In *Sanchez v. Roden*, 753 F.3d 279, 302 n.17 (1st Cir. 2014), the First Circuit noted its "past exhortation to the trial courts to seek an explanation for a prosecutor's use of peremptory challenges even where the judge may not believe [a *prima facie*] showing has been made, as counsel's explanation facilitates appellate review and may even serve to avoid reversal should we conclude a sufficient prima facie showing had been made." *Accord Scott v. Gelb*, 810 F.3d 94, 98 (1st Cir. 2016). As a leading treatise summarizes the case law on this issue, "[a] detailed explanation for the Batson claim is not required for a court to inquire of the party exercising the peremptory challenge the reason for removing the juror." Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Crim.* § 384 (4th ed.).

2. I disagree with the court's conclusion that Hill's argument concerning similarly situated non-black jurors is subject to plain error review under Rule 52(b) of the Federal Rules of Criminal Procedure. As portions of the *voir dire* transcript quoted by the court make clear, *ante* pp. 3-5, Hill's contention that the district court clearly erred in overruling his *Batson* challenge to the peremptory strike of Juror 10 is not raising a new issue on appeal. Indeed, it was *government counsel* that compared the *voir dire* answers of Juror Nos. 1, 8, and 10 in defending its race-neutral reason for striking No. 10. Thus, Hill makes a legitimate argument based on the record underlying an issue governed by clear error review. The right answer to this argument is that the court committed no clear *Batson* error. "[W]e have upheld the use of very fine distinctions between jurors." *United States v. Morrison*, 594 F.3d 626, 633 (8th Cir. 2010).

As the transcript reveals, the issue here is whether an *argument* was preserved for appellate review -- it was -- not whether an *error* occurred that requires plain

error review under Rule 52(b).  Rule 52(b) provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  In *United States v. Olano*, 507 U.S. 725, 731 (1993), the Supreme Court granted certiorari "to clarify the standard for 'plain error' review by the courts of appeals under Rule 52(b)."  The Court's opinion in *Olano* is typically read as asking us to determine whether an issue raised on appeal was forfeited in the district court, in which case we review under Rule 52(b) for plain error, or was waived, in which we refuse to consider it on appeal.  But this reads the opinion too broadly:

> The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error.'  Deviation from a legal rule is 'error' unless the rule has been waived. . . .
>
> Waiver is different from forfeiture.  Whereas forfeiture is the failure to make timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'

*Id.* at 732-33.  What is significant here, in my view, is that Rule 52(b) does not apply unless there is error.  It does not apply to legal arguments not raised in the district court, whether or not those arguments have been affirmatively "waived."  *Arguments* not made in the district court are usually not preserved for appeal.  We have discretion to consider them, but exercise of that discretion does not require the four-step plain error analysis under Rule 52(b).  Other standards of review apply to such arguments, whether we call them "forfeited" or simply not preserved.  The prior decisions cited in footnote 3 of the court's opinion demonstrate how often panels of our court have failed to read *Olano* and Rule 52(b) with proper precision.

The Supreme Court has broadly stated, "Our cases . . . do not purport to shield any category of errors from plain-error review."  *Davis v. United States*, 140 S. Ct. 1060, 1061 (2020).  But plain error review under Rule 52(b) is required only if the district court has committed "error" -- defined in *Olano* as deviating from a legal rule -- for example, by miscalculating the advisory guidelines sentencing range, as in *Rosales-Mireles*, or by failing to conduct the colloquy required by Rule 11(b)

before accepting a guilty plea, as in *United States v. Vonn*, 535 U.S. 55 (2002).  Here, I conclude *there was no error.*

At step three in the *Batson* process, a prosecutor's inconsistent application of a facially race-neutral reason to prospective white and black jurors may evidence purposeful discrimination.  *See Nicklasson v. Roper*, 491 F.3d 830, 842 (8th Cir. 2007).  The government and the district court recognized this principle in expressly considering whether Juror Nos. 1, 8, and 10 were similarly situated.  Thus, the court's entire discussion of the Rule 52(b) standard of review is unnecessary because the *issue* was raised in the district court.  But if the issue had not been raised at all, then the district court's failure to address it and make findings would *not* "deviate from a legal rule" and be subject to Rule 52(b) plain error review unless Hill, the party with the ultimate *Batson* burden of proof, argued *to the district court* it was disregarding a relevant factor.  Then Hill could argue on appeal that the district court's response to this specific objection deviated from the legal rule governing resolution of *Batson* objections to the exercise of peremptory strikes.

Rule 52(b) deals with errors, not arguments.  The failure to raise an argument -- often but not always to sandbag the district court -- usually results in our declining to exercise discretion to consider the argument when first raised on appeal.  In such cases, we typically say the issue was not preserved for appeal.  Thus, in a long line of Eighth Circuit precedent the court misreads, we have simply said "*we will not consider* claims of pretext based upon the failure to strike similarly situated jurors unless the point was raised in the district court."  *United States v. Arnold*, 835 F.3d 833, 842 (8th Cir. 2016) (emphasis added), quoting *United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009).  Because Rule 52(b) does not apply in the absence of "error," this straightforward application of a discretionary standard of review prevents sandbagging while avoiding tedious plain error review.  *Cf. Puckett v. United States*, 129 S. Ct. 1423, 1431-32 (2009).  In my view, the court's failure to follow these controlling Eighth Circuit precedents is an unfortunate departure from

our firm rule that we are bound by prior panel opinions.  However, if plain error review is the proper standard, I concur in the court's plain error analysis.

_____